## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Keypath Education, Inc.,**

        **Plaintiff,**

**v.**                                     **Case No. 16-cv-2545-JWL**

**BrightStar Education Group, Inc.**
**and Select Education Group, LLC,**

        **Defendants.**

### <u>MEMORANDUM & ORDER</u>

Plaintiff Keypath Education, Inc. ("Keypath") filed this lawsuit alleging that defendants breached various contracts between the parties under which plaintiff agreed to provide advertising and marketing services to defendants in exchange for payment for such services. Defendant Select Education Group ("Select Education") counterclaimed against plaintiff for, among other claims, breach of fiduciary duty.  This matter is presently before the court on Keypath's motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (doc. 26) with respect to Select Education's counterclaim for breach of fiduciary duty.  As will be explained, the motion is denied.

**Standard**

A motion for judgment on the pleadings made pursuant to Federal Rule of Civil Procedure 12(c) is treated as a motion to dismiss for failure to state a claim made pursuant to Rule 12(b)(6).  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) (citing *Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 528 (10th Cir. 1992)).  The

court will grant a motion to dismiss when a claimant's factual allegations fail to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim need not contain detailed factual allegations, but a claimant's obligation to provide the grounds of entitlement to relief requires more than labels and conclusions; a formulaic recitation of the elements of a cause of action will not do. *See id.* at 555. The court must accept the facts alleged in the answer and counterclaim as true, even if doubtful in fact, *see id.*, and view all reasonable inferences from those facts in favor of the claimant, *see Tal v. Hogan*, 453 F.3d 1244, 1252 (10th Cir. 2006). Viewed as such, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**Background**

For purposes of Keypath's Rule 12(c) motion, the court accepts as true the following well-pleaded facts alleged in Select Education's answer and counterclaim. *See Sanders v. Mountain Am. Federal Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012). In August 2014, Counterclaim-Plaintiff Select Education purchased certain assets of Brightstar Education Group, Inc. and began operating four Institute of Technology campuses located in California and Oregon that Brightstar previously operated (the "IOT Campuses"). At some point prior to Select Education's purchase of Brightstar's assets, Brightstar had hired Counterclaim-Defendant Keypath to perform marketing-related services for the IOT Campuses. These services included managing social media, generating leads, pay-per-click marketing, optimizing search engine results and handling in-bound call services for the IOT Campuses.

2

When Select Education began operating the IOT Campuses, it relied on Keypath's representations and trusted it to perform the advertising and marketing services it promised to provide.  In the spring of 2015, Select Education became concerned that Keypath was not competently performing the services it promised to provide.  According to Select Education, two separate audits conducted by third-parties revealed "serious and systemic failures" in Keypath's performance.  Select Education identifies numerous specific failures in their counterclaim including, but not limited to:  failing to post content frequently and regularly on IOT Campuses' social media accounts; ignoring Yelp and Google reviews concerning IOT Campuses; creating social media content that was plagiarized from other websites; purchasing low-quality leads from entities in which Keypath had an economic interest; purchasing leads originating from underperforming zipcodes while ignoring leads originating from better-performing zipcodes; failing to optimize IOT Campuses' websites to increase search engine hits; charging for services it did not perform; and failing to keep IOT Campuses' contact information up-to-date on social media.  Select Education alleges that Keypath acknowledged many of the deficiencies and failures but failed to correct the problems.  Select Education alleges that it had an "agency relationship" with Keypath and that Select Education bestowed a "level of discretion, trust and confidence" on Keypath such that Keypath owed "fiduciary duties" to Select Education with respect to Keypath's management of IOT Campuses' social media, pay-per-lead marketing campaign, pay-per-click marketing campaign, search engine optimization, and in-bound calling services.

On November 25, 2015, Select Education terminated its relationship with Keypath. According to Select Education, it asked Keypath to assist in the transition of its service to new

3

entities but Keypath impeded that transition in several ways.  Select Education alleges that Keypath could not transfer ownership or provide access to IOT Campuses' social media accounts because Keypath created those accounts in its own name and lost the passwords to those accounts.  Even after various social media vendors (such as Facebook and LinkedIn) proposed solutions to provide access to these accounts, Keypath delayed assistance and failed to execute the instructions of those vendors.  Select Education alleges that Keypath's interference caused Select Education to spend numerous hours to regain control of IOT Campuses' social media and delayed Select Education's implementation of a new, effective marketing campaign.  According to Select Education, Keypath's interference caused Select Education to lose numerous potential students.  Finally, Select Education alleges that Keypath's mismanagement of IOT Campuses' in-bound calling services prevented Keypath from transferring access and ownership to Select Education in an efficient manner and delayed the transition of those services to a new entity.

Select Education has asserted counterclaims against Keypath for breach of contract, breach of the covenant of good faith and fair dealing; breach of fiduciary duty; and unjust enrichment.  Keypath moves for judgment on the pleadings on Select Education's claim for breach of fiduciary duty.

**Discussion**

In its motion, Keypath asserts that judgment on the pleadings is appropriate because Select Education has failed to allege any facts supporting the existence of a fiduciary relationship between the parties.  According to Keypath, Select Education's conclusory

4

allegation that an agency relationship existed and that Select Education placed a "level of discretion, trust and confidence" in Keypath is, even if true, insufficient to establish a fiduciary relationship.   Select Education, in turn, contends that Keypath agreed to act as Select Education's agent; that it placed special trust and confidence in Keypath; that it relied on Keypath's expertise in managing its advertising and marketing services; and that these allegations are sufficient at this juncture to support the existence of a fiduciary relationship.

Under Kansas law,[1] a "fiduciary relationship exists where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence." *Dana v. Heartland Management Co.*, 301 P.3d 772, 785 (Kan. Ct. App. 2013).  Two types of fiduciary relationships exist: (1) those specifically created by contract such as principal and agent; and (2) those implied in law due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions.  *Id.*  Select Education contends that its counterclaim sufficiently alleges the existence of a principal-agent relationship such that Keypath owed fiduciary duties to Select Education.   In the alternative, Select Education asserts that the allegations in the counterclaim are sufficient to establish an implied fiduciary relationship under the second category identified by Kansas courts.  Because Select Education directs the court to no contract between the parties that expressly creates a fiduciary or principal-agent relationship, the court examines whether the allegations in the counterclaim support the existence of an implied fiduciary relationship under the second category identified

---

[1] Both parties, without discussion, have relied on Kansas law in their submissions.  Thus, the court assumes that Kansas law applies to this dispute.

by Kansas courts.   In other words, the court analyzes whether the "factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions," as described in the counterclaim, supports the existence of an implied fiduciary relationship.  *See CitiMortgage, Inc. v. White*, 2013 WL 5422317at *7 (Kan. Ct. App. Sept. 27, 2013) (in the absence of express duty created by contract or formal legal proceedings, any fiduciary duty must be on implied in law).

In its motion, Keypath urges that the "only possible" source of a fiduciary or agency relationship between the parties is the written contracts between the parties which, according to Keypath, are arms-length commercial contracts from which no fiduciary relationship may be inferred.  *See Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1245 (10th Cir. 2006) ("An ordinary business relationship should not be construed as a fiduciary relationship, absent clear intent by the parties.") (applying Kansas law).   But the written contracts upon which Keypath relies are referenced only in Keypath's complaint rather than Select Education's counterclaim.   In fact, Select Education contends in its answer that the written contracts, which were executed by Brightstar long before Select Education purchased Brightstar's assets, are not binding on Select Education.   The court, then, cannot rely on the written contracts in evaluating whether the counterclaim survives Keypath's Rule 12(c) motion. *See Entek GRB, LLC v. Stull Ranches, LLC*, 2012 WL 4478808, at *1 (D. Colo. Sept. 28, 2012) (plaintiff's motion to dismiss counterclaim cannot rely on matters outside of counterclaim and court would not consider documents referenced only in complaint).

Moreover, despite Keypath's argument that the parties' relationship was an "ordinary" arms-length business relationship, the allegations in Select Education's counterclaim suggest

6

otherwise.  Select Education alleges that Keypath operated as Select Education's agent with respect to IOT Campuses' social media accounts and that Keypath established itself as the owner of those accounts with exclusive access to those accounts.  According to Select Education, Keypath created social media accounts for IOT Campuses in Keypath's name and Select Education was unable to access those social media accounts without permission from Keypath.  According to the counterclaim, Keypath was the only entity capable of posting on and managing IOT Campuses' social media accounts.  These allegations suggest, consistent with Select Education's argument, that Select Education and Keypath had an implied fiduciary relationship.  The counterclaim reveals that Keypath agreed to act on behalf of Select Education, particularly with respect to IOT Campuses' social media accounts, and that Keypath in fact acted on behalf on Select Education when it assumed control of those social media accounts. *See Dana*, 4301 P.3d at 785 (implied fiduciary relationship may arise when one party acts on behalf of another).  While Keypath urges that it never consciously assumed a fiduciary duty with respect to Select Education, *see id*. (party may not unilaterally impose a fiduciary relationship with another; other party must consciously assume such duties), the counterclaim permits the inference that Keypath knowingly assumed that duty when Select Education apparently relinquished control over its social media accounts to Keypath and Keypath exercised total control over those accounts. *See id*. at 786 (relinquishment of control over decision making is a key characteristic of a fiduciary relationship); *Denison State Bank v. Madeira*, 230 Kan. 684, 692 (1982) (fiduciary relationship may exist when property of one party is placed in the charge of another).  In short, Select Education has alleged sufficient facts to show that the existence of an implied fiduciary relationship between it and Keypath is plausible, particularly with respect

7

to the management of IOT Campuses' social media accounts.  The motion, then, is denied.  *See Kindergartners Count, Inc. v. DeMoulin*, 249 F. Supp. 2d 1233, 1250-51 (D. Kan. 2003) (jury had to decide whether consultant who represented plaintiff-entity at conferences and in media interviews had implied fiduciary relationship with entity).

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff's motion for partial judgment on the pleadings (doc. 26) is denied.

**IT IS SO ORDERED.**

Dated this 31st day of January, 2017, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge